# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARILYNN G. VANDEVER and CHARLES VANDEVER, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| OSAGE NATION ENTERPRISE, INC. and OSAGE NATION, | ) ) ) |
| Defendants. | ) ) |

Case No. 06-CV-380-GKF-SAJ

## REPORT AND RECOMMENDATION

Comes on for report and recommendation, pursuant to reference from the assigned District Judge, Motion of Defendants Osage Nation (the "Nation") and Osage Nation Enterprise, Inc., ("ONE") To Dismiss For Lack of Jurisdiction [Docket No. 12], Or, In the Alternative, To Abstain [Docket No. 13]. Movants also seek attorney fees [Docket No. 12] in connection with the motions and the Court, having considered the arguments and authority presented, enters the following report and recommendation.

### I. CLAIMS AND DEFENSES

Plaintiffs filed their Complaint in federal court on July 21, 2006, alleging violations of 29 U.S.C. §1161, *et seq.*, ("ERISA") and 29 U.S.C. §1001, *et seq.*, ("COBRA"). Plaintiff Marilynn G. Vandever asserts she was employed by Defendants through October 21, 2004, and was entitled to health insurance benefits under a plan instituted by Defendants on October 1, 2004. Plaintiff Charles Vandever alleges he was entitled to benefits as her

1

spouse. Mrs. Vandever asserts that when she made a claim for benefits, it was denied and that neither she nor her husband received COBRA notices as required.

Defendants specially appeared and filed Motion to Dismiss based upon lack of jurisdiction, or in the alternative, Motion to Abstain to allow the dispute to be adjudicated in tribal court. Defendants assert they are entitled to sovereign immunity and that their immunity has not been abrogated by Congress nor waived by consent of Defendants.

In order to dismiss an action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), the complaint must successfully be challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d at 590, 593 (8th Cir. 1993). In this case, the motion to dismiss raises a factual challenge to jurisdiction. The Court is therefore afforded the unique power to make factual findings which are decisive of its jurisdiction. *Williamson v. Tucker,* 645 F.2d 404 (5th Cir. 1981). Both parties have submitted appended materials in support of their respective positions which the Court has considered.

## II. ARGUMENTS AND AUTHORITY

Nation is an Indian tribe with a governing body duly recognized by the Secretary of the United Stated Department of the Interior which maintains its governmental offices and jurisdiction within the Osage Reservation established for the Nation by Act of June 5, 1872, ch. 310, 17 Stat. 228 (1872). The reservation is the Indian Country of the Nation within the meaning of 18 U.S.C. §1151 and shares its geographical boundaries with that of Osage County, Oklahoma.

The Nation is unquestionably a federally-recognized Indian tribe with sovereign immunity. The pivotal question is whether the Nation is subject to suit in federal court

pursuant to ERISA and/or COBRA because its sovereign immunity has been waived by tribal consent or abrogated by Congress when enacting those statutory schemes. For this Court to have jurisdiction over a claim arising in Indian Country against an Indian tribe and a political subdivision thereof, a two-step analysis is necessary. *See Mulitmedia Games Inc. v. WLGC Acquisition Group*, 214 F.Supp.2d 1131, 1136 (N.D. Okla. 2001); *Florida Paraplegic, Assn. v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1129-30 (11th Cir. 1999).

The first step of the analysis requires the Court to decide whether the aforementioned federal statutes apply to the Nation and ONE. If the federal statutes are applicable to the Nation and ONE, the second step then requires the Court to determine whether sovereign immunity has been waived or abrogated to allow suit in federal court by Plaintiffs—private parties— against the Nation and ONE. In other words, simply finding a federal statute applicable to an Indian tribe and its governmental entity does not complete the jurisdictional analysis.[1] A complete analysis must go beyond the initial step of the federal statute's applicability, focusing instead on whether the tribe's sovereign immunity has been waived by tribal consent, or abrogated by Congressional authority. Therefore, this Court would only have jurisdiction over this case if the federal statutes are applicable to the Nation and its entities, and if the Nation's tribal sovereign immunity has been either waived or abrogated.

---

[1] On the other hand, a negative determination made at the initial step of the analysis described above—i.e. the federal statute(s) are neither applicable to the tribe nor its entities— would preclude federal court analysis under the second step, and the tribal court would have exclusive jurisdiction over a suit by any person against an Indian for a claim not governed by federal law arising in Indian Country. *See Williams v. Lee*, 358 U.S. 217 (1959) (when a tribal member is the defendant, and the claim arises in Indian Country, tribal jurisdiction is exclusive).

## A.  Applicability of ERISA and/or COBRA[2] to Indian Tribes

Over forty-five years ago, the United States Supreme Court established in dictum[3] that "a general statute in terms applying to all persons includes Indians and their property interests." *Federal Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 116 (1960). This general rule, known as the *Tuscarora* rule, "presumes that when Congress enacts a statute of general applicability, the statute reaches everyone within federal jurisdiction not specifically excluded, including Indians and Tribes." *Smart v. State Farm Insurance Co.*, 868 F.2d 929, 932 (7th Cir. 1989). Broad application of the *Tuscarora* rule, however, has been whittled down over the years.

> In 1982, the Tenth Circuit questioned the continued application of . . . the *Tuscarora* rule in light of the United States Supreme Court's subsequent decision in *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). *See Donovan v. Navajo Forest Products Industries*, 692 F.2d 709, 712 (10th Cir. 1982). In essence, the Tenth Circuit found that the Supreme Court in *Merrion* impliedly overruled or restricted its own *Tuscarora* rule by holding "that an Indian tribe's power to exclude non-Indians from tribal lands is an *inherent attribute* of tribal sovereignty, essential to a tribe's

---

[2] When referring to ERISA in this case, this Court incorporates COBRA by reference. Since COBRA is an amendment to ERISA, any discussion of ERISA as a statute of general applicability will also apply to COBRA—thus encompassing Plantiffs' claims under both Acts. *See Geissal v. Moore Medical Corporation*, 524 U.S. 74, 76 (1998). The relationship between ERISA and COBRA was stated by the United States Supreme Court as follows:

> [t]he Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), authorizes a qualified beneficiary of an employer's group health plan to obtain continued coverage under the plan when he might otherwise lose that benefit for certain reasons, such as the termination of employment.

*Id.*

[3] *See Equal Opportunity Comm. v. The Cherokee Nation*, 871 F.2d 937, 938 n. 3 (10th Cir. 1989) (characterizing the *Tuscarora* rule as dictum); *see also Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (7th Cir. 1985) (finding that while the language forming the *Tuscarora* rule is dictum, "it is dictum that has guided many of our decisions").

4

>exercise of self-government and territorial management." *Donovan*, 692 F.2d at 712 (emphasis added).

*Multimedia Games,* 214 F.Supp.2d at 1136.

In 1985, the Ninth Circuit—accepting the general *Tuscarora* rule—carved out three exceptions to *Tuscarora's* "general statute" presumption. *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir. 1985). In *Coeur d'Alene*, the court found the Occupational Safety Health Act ("OSHA") to be a statute of general applicability. *Id*. at 1115. The court had to address whether OSHA—a statute of general applicability but silent as to Indian tribes—applied to Indian tribes and its entities. *Id*. Refusing to accept the proposition that "Indian tribes are subject only to those laws of the United States expressly made applicable to them," the Court cited the *Tuscarora* rule, giving OSHA the presumption of applying to Indian tribes. *Id*. at 1116. But notably, the court found three exceptions to the *Tuscarora* rule whereby

>[a] federal statute of general applicability that is silent on the issue of applicability to Indian tribes will not apply to them if: (1) the law touches "exclusive rights of self-governance in purely intramural matters"; (2) the application of the law to the tribe would "abrogate rights guaranteed by Indian treaties"; or (3) there is proof "by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations . . . ."

*Id*. (quoting *United States v. Farris*, 624 F.2d 890, 893-94 (9th Cir. 1980)). In any of these three scenarios, "Congress must *expressly* apply a statute to Indians before we will hold that it reaches them." *Coeur d'Alene*, 751 F.2d at 1116 (emphasis in original).

While previously questioning the continued application of the *Tuscarora* rule in *Donovan v. Navajo Forest Products Industries*, 692 F.2d 709, 712 (10th Cir. 1982), the Tenth Circuit has since adopted the *Coeur d'Alene* exceptions in *Nero v. Cherokee Nation*

5

*of Oklahoma*, 892 F.2d 1457, 1462-63 (10th Cir. 1989). Adoption of the *Coeur d'Alene* exceptions by the Tenth Circuit utilizes yet limits the *Tuscarora* rule.

ERISA is a statute of general applicability. *See* 29 U.S.C. § 1001; *Smart*, 868 F.2d at 933; *Lumber Indus. Pension Fund v. Warm Springs Forest Products Indus.*, 939 F.2d 683, 685 (9th Cir. 1991).

> ERISA is a comprehensive and reticulated statute, regulating, among other things employee welfare benefit plans. The purposes of ERISA are twofold, to protect interstate commerce and the participants and beneficiaries of such plans. ERISA applies to any employee benefit plan established or maintained by an employer engaged in commerce or in any industry or activity affecting commerce . . . . [ERISA] excludes certain plans from coverage, offering narrowly defined exemptions for church and governmental plans. ERISA preempts state laws which purport to regulate or govern employee benefit plans, and provides the exclusive remedy for putative beneficiaries seeking to recover benefits under a covered plan.

*Smart*, 868 F.2d at 933 (internal quotations, citations, and footnotes omitted). When the facts and circumstances surrounding Plaintiffs' claims arose, ERISA—including its legislative history—was completely silent with regard to Indian tribes and its entities.[4]

---

[4] Government plans are exempt from ERISA. At the time this case was filed,

> the definition of government plan under ERISA included plans established or maintained by federal and state governments, but did not explicitly include tribal governments. In August 2006, . . . Congress amended the definition of governmental plan under ERISA to include plans established and maintained by tribes. The amended definition expressly includes some benefit plans established and maintained by tribes:
>
>> The term "governmental plan" includes a plan which is established and maintained by an Indian tribal government . . ., a subdivision of an Indian tribal government . . ., or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function).

Therefore, this Court will apply the framework as utilized by the Seventh, Ninth, and Tenth Circuits. This framework begins with the general rule—otherwise known as the *Tuscarora* rule or the "general statute" presumption—providing "that when Congress enacts a statute of general applicability, the statute reaches everyone within federal jurisdiction not specifically excluded, including Indians and Tribes." *Smart*, 868 F.2d at 932. Consequently, ERISA—a statute of general application—will apply to the Nation and ONE, unless it falls under one of the three *Coeur d'Alene* exceptions.

### 1. The "Aspects of Tribal Self-Government" Exception to the *Tuscarora* Rule

The first *Coeur d'Alene* exception provides that if a federal statute of general applicability "touches exclusive rights of self-governance in purely intramural matters" it will not apply to the Indian tribe unless made expressly applicable by Congress. *Coeur d'Alene*, 751 F.2d at 1116 (internal citation and quotations omitted). Here, Defendants argue that application of ERISA touches exclusive rights of self-governance in purely intramural-matters because

> Plaintiffs' claims . . . arose on the Indian country lands of the Nation and raise substantial questions as to: (1) the nature and scope of Defendants' own health insurance plan as it was established under the Nation's own laws . . . ; (2) the Nation's own personnel policy and administrative procedure for asserting such claims; (3) the role of the Nation's employees and [possibly] the Nation's own governmental officials in alleged discrimination practices; and (4) the role of the Nation's new form of government, and the laws applicable to the Nation and its entities, duly established by the Nation's newly adopted Constitution in 2006.

[Defendants' Reply Brief, p. 6, Docket No. 16].

---

*Dobbs v. Anthem Blue Cross & Blue Shield*, 475 F.3d 1176, 1178 (10th Cir. 2007) (quoting 29 U.S.C. § 1002(32)). Due to *ex post facto* principles, this Court will only consider ERISA as it existed before the August 2006 amendment.

7

The Court disagrees, finding that the application of ERISA to the Nation and ONE would not improperly interfere with the Nation's tribal right of self-governance in intramural matters. Defendants' arguments are painted with too broad of a brush. The court in *Couer d'Alene* limited this self-government exception to the *Tuscarora* rule to "purely intramural matters such as conditions of tribal membership, inheritance rules, and domestic relations." 751 F.2d at 1116. When a statute of general application threatens these purely intramural affairs, it will not extend to an Indian tribe—absent express Congressional application—pursuant to the self-government exception. But this exception does not shelter a tribe from a statute of general application any time it affect the tribe's self-governance. Here, the arguments raised by Defendants fall outside of the limits prescribed by the self-government exception.

Like the arguments raised by Defendants, it was argued in *Smart* that "application of ERISA to the Chippewa Tribe would interfere with the Tribe's exclusive right of self-government because ERISA would formally prescribe the relationship between a Tribal employer and its employees." 868 F.2d at 935. Finding this argument overbroad the court reasoned that

> [a]ny federal statute applied to an Indian on a reservation or to a Tribe has the arguable effect of eviscerating self-governance since it amounts to a subordination of the Indian government. But Indian Tribes are not possessed of absolute sovereignty. The "right of tribal self-government is ultimately dependent and subject to the broad power of Congress." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143, 100 S.Ct 2578, 2585, 66 L.Ed.2d 665 (1980). Statutes of general application are already applied to Indian Tribes which have the same arguable effect of interfering with the Tribe's ability of self-governance by defining Tribe-employer relations with employees, for example federal withholding taxes, which are applied to Indian Tribe employers. *See* F. Cohen, *Handbook of Federal Indian Law* 399 (1982 ed.).

*Smart*, 868 F.2d at 935.

This Court finds that ERISA does not intrude on an Indian tribe's governance of its intramural affairs. ERISA "does not broadly and completely define the employment relationship," but simply provides beneficiary protection for employees. *Id.* Its effect on the employment relationship between the tribe and its employees can be said to be less than that of the federal withholding tax. *Id.* ERISA "is only applied to an employment relationship if the employer decides to offer an employee benefit plan. Even then, ERISA merely requires reporting and accounting standards for the protection of the employees." *Id.* at 935-36. Since the application of ERISA would not usurp the Defendants' decision-making power, this Court further finds that the *Couer d'Alene* self-government exception does not apply to the Defendants in this case. *See Lumber*, 939 F.2d at 685 ("[t]he self-government exception applies only where the tribe's decision-making power is usurped").

### 2. The "Treaty Rights" Exception to the *Tuscarora* Rule

The second *Coeur d'Alene* exception provides that a federal statute of general applicability that is silent as to its applicability to Indian tribes will not apply to an Indian tribe if that statute "would abrogate rights guaranteed by Indian treaties." *Coeur d'Alene*, 751 F.2d at 1116 (internal citation and quotations omitted). In this case, however, neither the Plaintiffs nor the Defendants have argued that there is or is not any treaty language—or language in any other tribal document where the United States is a signatory—to allow or disallow the treaty rights exception to apply. Therefore, the Court finds the treaty rights exception to be inapplicable to the Defendants in this case.

### 3. The "Other Indications" Exception to the *Tuscarora* Rule

The third *Coeur d'Alene* exception provides that a federal statute of general

9

applicability that is silent as to its applicability to Indian tribes will not apply to an Indian tribe if " there is proof by legislative history or some other means that Congress intended the law not to apply to Indians on their reservations." *Coeur d'Alene*, 751 F.2d at 1116 (internal citation and quotations omitted). Until the August 2006 amendment[5] to ERISA—which will not apply to the instant case due to *ex post facto* principles—the Defendants do not argue, and there is nothing else to indicate that the legislative history of ERISA or the surrounding circumstances of its passage indicate any congressional desire to exclude an Indian tribe or its entities from the scope of its coverage. *See Coeur d'Alene*, 751 F.2d at 1118 (holding similarly with respect to OSHA). As a result, this Court finds the "other indications" exception is inapplicable to the Defendants in this case.

As discussed, this Court finds that ERISA is a federal statute of general applicability that is silent on the issue of its application to Indian tribes and their entities. The *Tuscarora* rule provides the presumption that ERISA will therefore apply to Defendants, Nation and ONE, unless they are excepted from application of the federal statute as provided by the *Coeur d'Alene* exceptions. Having analyzed each in turn, this Court finds that none of the *Coeur d'Alene* exceptions controls this case. Accordingly, ERISA applies to the Nation and its tribal entity, ONE.

### B. Tribal Sovereign Immunity

Finding that ERISA applies to the Nation and ONE is not outcome determinative. The second step of the analysis requires the Court to determine whether sovereign

---

[5] The August 2006 amendment to ERISA expressly provides for certain tribal entities to be exempt from ERISA under the "governmental plan" definition. 29 U.S.C. § 1002(32). *See supra* n. 4 for a more detailed discussion.

10

immunity has been waived or abrogated to allow for a private lawsuit in federal court by Plaintiffs against the Nation and ONE. A recent decision from this District recognized this principle in *Multimedia Games*, *Inc. v. WLGC Acquisition Group*, stating "'[t]he bare proposition that broad general statutes have application to Native American tribes does not squarely resolve whether there was an abrogation of tribal immunity . . .'" 214 F.Supp.2d 1131, 1136 (quoting *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1292 (11th Cir. 2001)). In similar fashion, the Eleventh Circuit in *Florida Paraplegic* found first that the "ADA is a generally applicable law and because no exception to the presumption that such statutes apply to Indian tribes controls this case, . . . the ADA governs the . . . tribe . . ." 166 F.3d at 1129-30. Upon making that determination, the court then moved to the next step in the analysis: "evaluating the question of whether, under the rules concerning tribal sovereign immunity, the . . . [t]ribe is amenable to a private lawsuit alleging violations of . . . the ADA." *Id.* at 1130.

It has long been recognized that "Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) (quoting *Worcester v. Georgia*, 31 U.S. 515, 559 (1832)). Indian tribes are sovereigns, each possessing the authority to regulate "their internal and social relations," *Santa Clara Pueblo*, 436 U.S. at 55, including the "power to make their own substantive law in internal matters." *Id.*; *see also Roff v. Burney*, 168 U.S. 218 (1897) (tribal membership); *Jones v. Meehan*, 175 U.S. 1 (1899) (inheritance rules); *United States v. Quiver*, 241 U.S. 602 (1916) (domestic relations). Indian tribes also retain the authority to "enforce that law in their own forums." *Santa Clara Pueblo*, 436 U.S. at 56 (citing, e.g., *Williams v. Lee*, 358 U.S. 217 (1959)). Indian tribes,

however, no longer hold the "full attributes of sovereignty," *United States v. Kagama*, 118 U.S. 375, 381 (1886), but are said to "possess limited sovereignty, subject to complete defeasance by Congress." *Rice v. Rehlner*, 463 U.S. 713 (1983). In fact, "Congress has plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." *Santa Clara Pueblo*, 436 U.S. at 56 (internal citations omitted). Because of the special relationship that exists between the United States federal government and the tribes,[6] this plenary authority held by Congress is "a serious undertaking, and we should not assume lightly that Congress intended to restrict Indian sovereignty through a piece of legislation." *Florida Paraplegic*, 166 F.3d at 1130. When tribal sovereign immunity from suit is at issue, "respect for the inherent autonomy Indian tribes enjoy has been particularly enduring." *Id.*

Similar to the immunity from suit enjoyed by other sovereigns, Indian tribes are "subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). "To abrogate tribal immunity, Congress must 'unequivocally' express that purpose," and "to relinquish its immunity, a tribe's waiver must be 'clear.'" *C & L Enter., Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001) (internal citations omitted).

Here, there has not been any indication of a waiver of the Nation's tribal sovereign

---

[6] The relationship between Indian tribes and the United States federal government is viewed as a trust relationship with the United States as trustee and the tribes as beneficiaries. *See Cherokee Nation v. Georgia*, 30 U.S. 1 (1831) (tribes characterized as "domestic dependent nations" whose relationship to the United States "resembles that of a ward to his guardian"); *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985) (because of the "unique trust relationship between the United States and the Indians," where Indian rights are at issue, federal "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit").

immunity by tribal consent. As a result, the Nation retains its tribal sovereign immunity from private suit unless Congressionally abrogated by an unequivocal expression of intent under ERISA. Congress may only abrogate tribal sovereign immunity "where the definitive language of the statute itself states an intent either to abolish Indian tribes' common law immunity or to subject tribes to suit under the act." *Florida Paraplegic*, 166 F.3d at 1131. Congress has not satisfied this test with ERISA. Neither the statutory language nor the legislative history of ERISA—prior to the August 2006 amendment—contains any reference to Indians or Indian tribes. *Smart*, 868 F.2d at 938 ("ERISA, a statute of general application without an expressed [C]ongressional intent with respect to coverage of Indian Tribe employers . . ."). This Court finds that Congress has not waived tribal sovereign immunity under ERISA. Accordingly, since not waived by tribal consent or abrogated by Congress, the Nation retains its tribal sovereign immunity and is not amenable to suit by Plaintiffs in federal court.

With regard to ONE, Defendants—in their motion to dismiss for want of jurisdiction [Docket No. 12, p. 4]—bring Tribal Resolution No. 31-810 to the Court's attention.[7] Tribal Resolution No. 31-810 states that ONE "shall be wholly owned by the Osage Tribe, is for the exclusive use of the Osage Tribe, furthers the purpose of economic development, that, *may sue and be sued without the issue of tribal sovereign immunity being involved* . . ." [Docket No. 12, ex. A (emphasis added)]. On its face, this resolution contains a clear waiver of tribal sovereign immunity with respect to ONE. Defendants argue that this waiver is ineffectual because this resolution

---

[7] The issue of tribal sovereign immunity being waived by the Nation's Tribal Resolution No. 31-810 is neither raised nor argued by the Plaintiffs.

> was enacted by the Nation's former government and prior to the Nation's 2006 Constitution that specifically recognizes the Nation and its governmental entities as having sovereign immunity from suit or process unless waived by the Nation's Congress. *See* Art. XIX, [Docket No. 12, ex. B]. The Savings Clause in Article XXII of the Nation's Constitution does recognize that laws and acts of the former government will remain in full force and effect but only to the extent that such laws and acts are consistent with the new Constitution. Tribal Resolution No. 31-810 does not have a waiver of sovereign immunity provision approved by the Nation's Congress acting under authority of the new Constitution . . .

[Docket No. 12, p. 4]. This Court finds that because this issue will be decided based on the application and interpretation of the Nation's Constitution and the laws of the Nation, it should be determined by the Nation's courts in the first instance. *Natl. Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 856-57 (1985) (federal court must stay its hand and permit the tribal court to rule in the first instance upon the question of its own jurisdiction).

Finding that ERISA applies to the Nation and ONE, but disallowing suit in federal court due to tribal sovereign immunity (or in the case of ONE, so that the Nation's court can decide the issue of tribal sovereign immunity) is not unprecedented. In *Santa Clara Pueblo*, the "Supreme Court recognized that Congress could enact a statute with substantive limitations on Indian tribes without providing any means for most individuals protected by the law to enforce their rights in federal court." *Florida Paraplegic*, 166 F.3d at 1134 (discussing *Santa Clara Pueblo*, 436 U.S. 49 (1978)).

> Tribal sovereign immunity is not a discretionary doctrine and in many ways acts as a veritable shield from suit. Having sovereign status, the tribal entity is not subject to the jurisdiction of the federal courts without its consent. In the absence of an explicit waiver by either Congress or the tribe, the Supreme Court has declined to find a waiver of immunity based on "policy concerns, perceived inequities arising from the immunity, or the unique context of the case."

*Multimedia Games*, 214 F.Supp.2d at 1139 (quoting *Ute Distribution Corp. v. Ute Indian Tribe*, 149 F.3d 1260, 1267 (10th Cir. 1998)).

Dismissing this case for lack of jurisdiction may not be judicially efficient. But we are governed by the important principles promoting and preserving the independence and self-governing nature of Indian tribes.

### C. Conclusion

ERISA is a federal statute of general applicability. The *Tuscarora* rule presumes that when Congress enacts a statute of general applicability, the statute reaches everyone within federal jurisdiction not specifically excluded, including Indians and Tribes. There are three exceptions to this general rule, none of which apply to the instant case. As a result, ERISA applies to the Nation and ONE.

Under the jurisprudence of tribal sovereign immunity, a federal statute can govern a tribe, yet fail to allow for suit by a private party in federal court. "Indian sovereignty has deep historical roots . . . and the presumption that tribes should not be subjected to lawsuits in state or federal court remains as strong today as ever." *Florida Paraplegic*, 166 F.3d at 1135. Tribal sovereign immunity will exist unless clearly waived by the tribe, or abrogated by an unequivocal expression of Congressional intent. There has been neither waiver nor abrogation of tribal sovereign immunity as it relates to the Nation. While abrogation of tribal sovereign immunity by Congressional authority does not exist as to ONE, it remains a question for the Nation's courts to determine whether ONE has waived its sovereign immunity.

Therefore, this Court recommends that Defendants' Motion to Dismiss for Lack of Jurisdiction [Docket No. 12] be granted for the reasons stated herein. Granting this motion

renders Defendants' Motion to Abstain [Docket No. 13] moot. Furthermore, because no authority has been presented to the Court entitling Defendants to attorney fees and costs, this Court also recommends that Defendants' Motion for Attorney Fees and Costs [Docket No. 12] be denied.

## Objections

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation. Objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within 10 days of being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 6 (as to computation of time periods). If specific written objections are timely filed, the district judge assigned to this case will

> make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b). *See also* 28 U.S.C. § 636(b)(1).

The Court of Appeals for the Tenth Circuit has adopted a "firm waiver rule" in connection with appeals from orders adopting a Magistrate Judge's report and recommendation. "[T]he failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property,* 73 F.3d 1057, 1059 (10th Cir. 1996) (*quoting Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). **Thus, a timely, specific and written**

**objection is necessary to preserve an issue for *de novo* review by the assigned district judge and for appellate review by the court of appeals.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Haney v. Addison*, 175 F.3d 1217 (10th Cir. 1999); and *Talley v. Hesse*, 91 F.3d 1411 (10th Cir. 1996).

DATED THIS SIXTH DAY OF AUGUST 2007.

*[signature]*
Sam A. Joyner
United States Magistrate Judge