**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

MARILYN G. VANDEVER and            )
CHARLES VANDEVER,                  )
                                   )
            Plaintiffs,            )
                                   )
vs.                                )        Case No. 06-CV-380-GKF-TLW
                                   )
OSAGE NATION ENTERPRISE, INC.      )
and OSAGE NATION,                  )
                                   )
            Defendants.            )

## OPINION AND ORDER

This matter comes before the court on the Report and Recommendation of the Magistrate

Judge [Doc. No. 25] on defendants' Motion to Dismiss for Lack of Jurisdiction [Doc. No. 12]

and Alternative Motion to Abstain [Doc. No. 13], and plaintiffs' Objection to Magistrate's

Report and Recommendation [Doc. No. 26]. Plaintiff's Objection to the Magistrate's Report and

Recommendation is granted. The Magistrate Judge's Report and Recommendation is accepted

in part and rejected in part. Defendants' Motion to Dismiss for Lack of Jurisdiction and

Alternative Motion to Stay are denied.

### I. Background

This is an action for alleged breach of the Consolidated Omnibus Budget Reconciliation

Act ("COBRA"), 29 U.S.C. §1161, *et seq.*, and the Employee Retirement Income Security Act of

1974 (ERISA), 29 U.S.C. §1001, *et seq.* Plaintiff Marilynn G. Vandever and her husband,

Charles Vandever, allege she was an employee of defendants Osage Nation Enterprise,

Inc.("ONE"), and Osage Nation until October 21, 2004. Defendants instituted a health insurance

plan on October 1, 2004. Marilyn Vandever alleges she began to suffer from medical problems

during her employment and made a claim with the health insurance plan after the effective date

of the beginning of insurance coverage.  When she attempted to make a claim for health benefits,

defendants informed the health insurance plan she was not an employee and therefore not

entitled to coverage.  Plaintiffs allege defendants failed to provide the required COBRA election

notice in violation of 19 U.S.C. §1161, *et seq.,* and interfered with protected ERISA rights in

violation of 29 U.S.C. §1001, *et seq.*

     Defendants seek dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(1) on the

basis of tribal sovereign immunity.  Alternatively, in the event the court finds it has jurisdiction

of the case, defendants ask the court to abstain from hearing the case in order for plaintiffs to

exhaust their tribal court remedies.  Plaintiffs argue ERISA, as a statute of general applicability,

applies to Indian tribes, and preempts the authority of tribal courts.

     Defendants' motion was referred to Magistrate Judge Sam A. Joyner.  The Magistrate

Judge issued a Report and Recommendation in which he found that under the so-called

*Tuscarora* rule, ERISA applied to the benefit plan offered by defendants, but further concluded

no waiver of sovereign immunity by the tribe or abrogation of sovereign immunity by Congress

had occurred.   The Magistrate Judge concluded an issue remained as to whether defendant ONE

had waived sovereign immunity, but the issue should be decided in the first instance by tribal

courts.  The Magistrate Judge recommended the Motion to Dismiss for Lack of Jurisdiction be

granted.  Plaintiffs timely filed their objection to the Report and Recommendation.

## II. Standard of Review

     The district court must conduct a *de novo* review of a magistrate judge's report and

recommendation.  28 U.S.C. §636(b)(1)(C) ("A judge of the court shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") *See also Northington v. Marin,* 102 F.3d 1564, 1570 (10th Cir. 1996) (De novo review is required after a party makes timely written objections to a magistrate's report.  The district court must consider the actual testimony or other evidence in the record and not merely review the magistrate's report and recommendations.").  The court may "accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §636(b)(1)(C); Fed.R.Civ.P. 72(b).

### III. Analysis

Plaintiff objected only to Part B of the Magistrate Judge's Report and Recommendation, in which he concluded the tribe had not waived and Congress had not abrogated tribal sovereign immunity.  Thus, this court's review of the Report and Recommendation is confined to Part B.

In Part A of the Report and Recommendation, the Magistrate Judge, applying the *Tuscarora* rule, held that ERISA applies to the tribe and ONE.[1]   However, stating, "Finding that ERISA applies to the Nation and ONE is not outcome determinative," he proceeded to the issue

---

[1]In *Federal Power Comm'n. v. Tuscarora Indian Nation,* 362 U.S. 99, 116 (1960), the Supreme Curt held that a statute of general and broad application applies to all persons, including Indian tribes.  In *Donovan v. Navajo Forest Products Industries,* 692 F.2d 709, 712 (10th Cir. 1982), the Tenth Circuit held that the Supreme Court's subsequent ruling in *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130 (1982), impliedly overruled or restricted its *Tuscarora* rule by holding that a tribe's power to exclude non-Indians from tribal lands is "an inherent attribute of tribal sovereignty, essential to a tribe's exercise of self-government and territorial management."  *Donovan,* 692 F.2d at 712.  The Tenth Circuit, along with other circuit courts, has recognized three major exceptions to *Tuscarora,* holding a federal statute of general applicability that is silent on the issue of applicability to Indian tribes will not apply to them if: (1) the law touches "exclusive rights of self-governance in purely intramural matters'" (2) the application of the law to the tribe would abrogate rights guaranteed by Indian treaties; or (3) there is proof "by legislative history or some other means that Congress intended the law not to apply to Indians on their reservations.  *Nero v. Cherokee Nation of Oklahoma,* 892 F.2d 1457, 1462-63 (10th Cir. 1989).

of tribal sovereign immunity.

Indian tribes possess common-law sovereign immunity from suit similar to that enjoyed by other sovereigns. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58 (1978). As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,* 523 U.S. 751, 754 (1998). Where Congress clearly indicates that Indian tribes are subject to a given law, no tribal sovereign exists to bar the reach or enforcement of the law. *Santa Clara Pueblo,* 436 U.S. at 58-59.

The Magistrate Judge opined neither a Congressional nor tribal waiver of tribal sovereign immunity had occurred. The court agrees no tribal waiver of sovereign immunity has occurred. However, an August 2006 change in ERISA law, coupled with the Tenth Circuit's decision in *Dobbs v. Anthem Blue Cross & Blue Shield,* 475 F.3d 1176 (10th Cir. 2007) leads the court to conclude a Congressional waiver has abrogated tribal sovereign immunity with respect to ERISA cases.

ERISA exempts from coverage the employee benefit plans of certain types of employers, including churches and governments. 29 U.S.C. §1003(b)(1) and (2). A "governmental plan" was, before August 2006, defined as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. §1002(32). Also included were plans to which the Railroad Retirement Act applied. *Id.* In 2006, the definition was amended as follows:

> The term "governmental plan" includes a plan which is established and
> maintained by an Indian tribal government (as defined in section 7701(a)(40)

4

of Title 26), a subdivision of an Indian tribal government (determined in
accordance with section 7871(d) of Title 26), or an agency or instrumentality
of either, and all of the participants of which are employees of such entity
substantially all of whose services as such an employee are in the performance
of essential governmental functions but not in the performance of commercial
activities (whether or not an essential government function).

Pension Protect Act of 2006, Pub.L. No. 109-280, §906(a)(2)(A) (codified as amended at 29

U.S.C. §1002(32)).  As a result of the amendment, certain (but not all) benefit plans established

by Indian tribes and their agencies or instrumentalities are exempt from ERISA.

In *Dobbs v. Anthem Blue Cross & Blue Shield,* 475 F.3d 1176 (10th Cir. 2007), the court

addressed the effect of the new amendment.  There, plaintiffs were beneficiaries of a group

health insurance policy sold and underwritten by Anthem and purchased through Mr. Dobbs'

employer, the Southern Ute Indian Tribe.  *Id.* at 1177.  Plaintiffs sued Anthem in Colorado state

court, asserting five state-law claims.  Anthem removed the case to federal court on the basis of

federal question jurisdiction, alleging ERISA (29 U.S.C. §1144) preempted the state-law claims.

Subsequently, Anthem filed a motion to dismiss the state law claims.  *Id.*  Plaintiffs argued

ERISA did not preempt their state-law claims because the statute does not apply to plans

established or maintained by tribes for their employees.  *Id.*  The district court concluded ERISA

applied to such plans and granted the insurer's motion to dismiss.  *Id.*  Plaintiffs appealed the

dismissal.  During the appeal process, 29 U.S.C. §1002(32) was amended to include as

"governmental plans" certain types of plans offered by tribes, their agencies and

instrumentalities.

In considering the effect of the amendment, the Tenth Circuit commented:

The amendment's legislative history suggests that Congress expanded the
definition to clarify the legal ambiguity regarding the status of employee
benefit plans established and maintained by tribal governments.  *See* Cong.

5

> Rec. S9526, 9533 (describing the senate bill as a "bill to amend the Internal
> Revenue Code of 1986 and the Employee Retirement Income Security Act
> of 1974 to clarify that federally recognized Indian tribal governments are
> to be regulated under the same government employer rules and procedures
> that apply to Federal, State, and other local government employers with
> regard to the establishment and maintenance of employee benefit plans").

*Id.* at 1178.  The court noted that the Seventh and Ninth Circuits had, prior to the amendment,

held ERISA applies to plans established and maintained by tribes.  *Id.* citing *Lumber Indus.*

*Pension Fund v. Warm Springs Forest Prods. Indus.,* 939 F.2d 683 (9th Cir. 1991) and *Smart v.*

*State Farm Ins. Co.,* 868 F.2d 929 (7th Cir. 1989).  The court also observed,

> Because the amended provision makes a distinction between "essential
> governmental functions" and "commercial activities," not all plans
> established and maintained by tribes will fall under the governmental
> plan exemption.  The determination of whether a tribal plan qualifies
> as a government plan under §1002(32) requires a fact-specific
> analysis of the plan at issue and the nature of its participants' activities.

*Id.*  The court found it lacked adequate information to determine whether the benefit plan met the

requirements of §1002(32) and, citing *Petrini v. Howard,* 918 F.2d 1482, 1485 (10th Cir. 1999),

remanded the case to the district court for "consideration in light of the amended definition."  *Id.*

The Tenth Circuit's opinion in *Dobbs* leads this court to make the following conclusions:

First, the amended definition of "governmental plan" is to be applied retroactively.

Therefore, although the events giving rise to this action occurred before the 2006 amendment,

under the court's directive in *Dobbs,* 29 U.S.C. §1002(32), as amended, applies to this case.

Second, the amended language of §1002(32) makes clear that Congress *has* abrogated

sovereign immunity of the tribes with respect to certain ERISA plans.  Although the Tenth

Circuit in *Dobbs* did not explicitly discuss tribal sovereign immunity, it recognized  that as a

result of the 2006 amendment of §2002(32), some tribal plans are exempt from ERISA and some

*are not. Dobbs*, 475 F.3d at 1178.   Implicit in this conclusion is an acknowledgment that tribal

plans are subject to ERISA unless they meet the amended definition of a "governmental plan."

Thus, ERISA abrogates tribal immunity as to certain plans.[2]

Third, whether the plan involved in this case is exempt from ERISA under §1003(b)(1)

has not been raised to date, and is not at issue. Therefore, having determined  ERISA abrogates

tribal sovereign immunity, the court finds it has jurisdiction of this case.

### IV. Defendants' Alternative Motion to Abstain

Defendants moved in the alternative for the court to abstain from hearing this case to

require plaintiffs to first adjudicate their claims in tribal court.  Defendants contend that under

principles of comity and tribal exhaustion of remedies set out in *Nat'l Farmers Union Ins. Co. v.*

*Crow Tribe of Indians,* 471 U.S. 845, 856-57 (1985) and *Iowa Mutual Ins. Co. v. LaPlante,* 480

U.S. 14, 15-17 (1985), plaintiffs' claims must, in the first instance, be pursued in tribal courts.

The court disagrees.  *National Farmers* involved suit by a school district and its insurer

to enjoin an injured school child from executing on a default judgment taken in Indian tribal

court against the school district.  The federal district court granted injunctive relief, holding the

tribal court had no jurisdiction over a civil action against a non-Indian. The Sixth Circuit

---

[2]Courts often look to definitional sections of statutes to determine whether tribal sovereign immunity has been abrogated.  In *Osage Tribal Council v. U.S. Dept. Of Labor,* 187 F.3d 1174, 1181 (10th Cir. 1999), the Tenth Circuit held definitional sections of the Safe Drinking Water Act ("SDWA") operated as a "clear and explicit waiver of tribal immunity." The statute defined the term "person" to include a "municipalilty." In turn, "municipality" was defined to include "an Indian tribe." *Id.* (citations omitted).   Similarly, in *Blue Legs v. U.S. Bureau of Indian Affairs,* 867 F.2d 1094, 1097 (8th Cir. 1989), the court held definitional sections of the Resource Conservation and Recovery Act abrogated tribal immunity.  RCRA allowed citizens to bring compliance suits against "any person...who is alleged to be in violation" of the act.  "Person" was defined to include municipalities and "municipalities" were defined to include "an Indian tribe or authorized tribal organization. *Id.* (citations omitted).

reversed, finding the federal district court had no jurisdiction to enter such an injunction.  The

Supreme Court held that the district court had federal question jurisdiction to hear the case, but

exhaustion of tribal court remedies was required before the federal court could entertain

plaintiff's claim.  471 U.S. at 852-856.   The court ruled the question of whether the tribal court

had the power to exercise civil subject-matter jurisdiction over non-Indians was an issue that

should be examined, in the first instance, in the tribal court itself.  *Id.* at 856.  In *Iowa Mutual,*

plaintiff employee sued his employer, a ranch located on the Blackfeet Indian Reservation and

owned by Indians, and his employer's insurer, in tribal court for personal injuries suffered in a

truck accident.  The tribal court, holding it had subject matter jurisdiction over claims involving

the conduct of non-Indians engaged in commercial relations with Indians on the reservation,

denied the employer's insurer's motion to dismiss.  Without seeking review by the tribal court of

appeals, the insurer filed suit in federal district court, alleging diversity jurisdiction.  The district

court dismissed the case and the appellate court affirmed.  The Supreme Court held diversity

jurisdiction existed and therefore dismissal by the district court was improper.  However, the

court affirmed *National Farmers Union* required the issue of the tribal court's jurisdiction to be

resolved by the tribal courts in the first instance.  480 U.S. at 19-20.

The exhaustion of tribal remedies requirement set out in *National Farmers Union* was

subsequently modified in *El Paso Natural Gas Company v. Neztsosie,* 526 U.S. 473 (1999).  In

*El Paso,* members of the Navajo Nation sued companies that operated open pit uranium mines on

the Navajo reservation from the 1940's through 1965 in Navajo district courts, asserting claims

personal injury, wrongful death and loss of consortium under Navajo tort law.  526 U.S. at 477-

78.  The uranium mining companies filed separate federal district court actions seeking to enjoin

8

the Navajo Tribal Court from asserting jurisdiction over the claims.  The companies claimed the

Price-Anderson Act preempted the tribal court claims.[3]  The federal district court, applying the

doctrine of tribal court exhaustion, declined to decide whether the act applied to the personal

injury claims.  The Ninth Circuit affirmed the district court.  The Supreme Court reversed,

holding in light of the preemption provision, "We are at a loss to think of any reason that

Congress would have favored tribal exhaustion."  *Id.* at 485.  The court ruled that the district

could should have decided whether the respondents' claims constituted "public liability action[s]

arising out of or resulting from a nuclear incident," and remanded with instructions to that effect.

*Id.* at 487-88.

ERISA, like the Price-Anderson Act, preempts state court claims related to benefit plans

falling under its purview.  29 U.S.C. §1144.  As the Supreme Court has noted:

> Congress enacted ERISA to "protect...the interests of participants in employee
> benefit plans and their beneficiaries" by setting out substantive regulatory
> requirements for employee benefit plans and to "provid[e] for appropriate
> remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. §1001(b).
> The purpose of ERISA is to provide a uniform regulatory regime over employee
> benefit plans.  To this end, ERISA includes expansive preemption provisions,
> see ERISA §514, 29 U.S.C. §1144, which are intended to ensure that employee
> benefit plan regulation would be exclusively a federal concern.

*Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004).  Given the preemptive nature of ERISA

and the express purpose of Congress to provide a uniform regulatory scheme over employee

benefit plans, the court concludes abstention would be inappropriate.

---

[3]The Price-Anderson Act of 1957 amended the Atomic Energy Act of 1954, 42 U.S.C.
§2011 *et seq.,* to transform into a federal action "any public liability action arising out of or
resulting from a nuclear incident."  42 U.S.C. §§2014(hh), 2210(n)(2).  The act gives federal
district courts original jurisdiction over such claims, provides for removal to a federal court as of
right if a putative Price-Anderson action is brought in a state court.  *El Paso,* 526 U.S. at 484-
485.

## V.  Employment Agreement

Defendants in their reply brief [Doc. No. 16] assert for the first time a Professional

Service Agreement between Marilyn Vandever and ONE requires dismissal.  As a matter of

procedural fairness, this court will not dismiss on the grounds of an argument raised for the first

time in a reply, as a plaintiff is thereby deprived of a due process right to respond.  In the event

defendants raise the argument in a motion for summary judgment, they may wish to address the

following considerations.

The agreement, which is dated July 1, 2004, states in pertinent part:

18.  Performance and Judicial Venue:

This agreement shall be performed within applicable guidelines, resolutions, and
ordinances of Osage Nation Enterprise, Inc.  This agreement has been made and
shall be governed by and constructed in accordance to the bylaws of Osage Nation
Enterprise, Inc. and applicable federal law.  Judicial venue and jurisdiction shall
be within the Osage Tribal Court.

[Doc. No. 16, attached exhibit].  The agreement labels Marilyn Vandever as a "contractor" and

describes the scope of work she is to perform and the hourly rate she is to be paid.  Paragraph 17

provides:  "This Agreement incorporates all the agreements, covenants and understandings

between both parties." [*Id.*].  The contract is silent with respect to benefit or benefit plans and,

indeed, predates implementation of the health benefit plan at issue.

ERISA empowers participants and beneficiaries to sue for benefits in federal court.  29

U.S.C. §§1132(a)(1), (e).  Beneficiaries also have the right to remove ERISA cases to federal

court, 28 U.S.C. §1441 .  A waiver of one's statutory right to bring or remove a case to federal

court must be "clear and unequivocal."  *See Milk 'n' More, Inc. v.  Beavert,* 963 F.2d 1342, 1346

(10th Cir. 1992).  Based on this initial review of the agreement at issue, defendants may have a

10

hurdle at summary judgment in showing a clear and unequivocal waiver of the right to bring these claims in federal court.  However, the court declines to rule at this time on the argument raised for the first time in defendants' reply to plaintiffs' response to defendants' Motion to Dismiss.

## VI.  Conclusion

Plaintiff's Objection to the Magistrate Judge's Report and Recommendation [Doc. No. 26] is granted.  The Magistrate Judge's Report and Recommendation [Doc. No. 25] is accepted in part and rejected in part, as detailed above.  Defendant's Motion to Dismiss for Lack of Jurisdiction [Doc. No. 12] and Alternative Motion to Abstain [Doc. No. 13] are denied.

ENTERED this 16th day of March, 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

11